## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JUDY PRESCOTT BARNETT, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:11-cv-1037 (VLB) |
| CONNECTICUT LIGHT & POWER | : | |
| COMPANY, NORTHEAST UTILITIES, | : | |
| NORTHEAST UTILITIES SERVICE | : | |
| COMPANY, THE UNITED ILLUMINATING | : | |
| COMPANY, | : | |
| Defendants. | : | September 28, 2012 |

### MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Dkt. #30], GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR JUDGMENT ON THE PLEADINGS [Dkt. #33]

### I. Introduction

The Plaintiff, Judy Prescott Barnett, claims that she was exposed to harmful radiation as a result of high levels of electromagnetic fields ("EMFs") emitted from power lines near her home.   She now seeks damages from the United Illuminating Company ("UI") and Northeast Utilities  ("NU"), as well as Northeast Utility Service Company ("NUSCO") and Connecticut Light and Power Company ("CL&P"), subsidiaries of NU, on the grounds that the public utility companies' conduct in the course of their dealings with the Plaintiff amounted to breach of contract (Count 1); unlawful taking (Count 2); private nuisance (Count 3); unlawful trespass (Count 4); breach of duty of possessor-occupier of land (Count 5); fraud, misrepresentation and deceit (Count 6); negligent infliction of emotional distress (Count 7); negligent misrepresentation (Count 8); and negligent private nuisance (Count 9).

1

The Defendants now argue that the Plaintiff's action must fail as a matter of law and move for summary judgment, or alternatively, judgment on the pleadings, as to her claims.

## II. Factual Background

### A. The Electromagnetic Fields

The following factual background is undisputed by the parties unless otherwise noted.   In 1985, the Plaintiff purchased the home and property located at 1500 Huntington Turnpike in Trumbull, Connecticut.  [Defs.' Joint Local Rule 56 Statement, Dkt. # 31, ¶ 1].  At the time of purchase, a power line owned and operated by CL&P and a power line owned and operated by UI, were located on an electric utility easement running behind the Plaintiff's home.  [Dkt. # 31 at  ¶ 9].

In 1987, CL&P upgraded its power line to replace it with a higher capacity system. [*Id.* at ¶¶ 10-11].  The Plaintiff alleges that, as a result of the upgrade, the EMF rates in her home reached above-normal levels. [Pl.'s Disputed Issues of Material Fact, Dkt. # 36, ¶ 2; Pl.'s Complaint, Dkt. # 22, ¶ 20].  The Plaintiff now claims that such high levels of EMFs are dangerous to human health, and alleges that severe and continuous harm was inflicted upon herself and her family as a result of two decades of long-term exposure to the high-level fields.

### B. The First Alleged Deception and Failure to Act

According to the Plaintiff, her concern over the EMF levels in her home began in 1987, when she read an article "concerning EMF's from power lines and about studies showing potential hazards to human health." [Dkt. # 22 at ¶ 16].  At that time, the Plaintiff claims that Mr. Carberry, an electrical engineer employed

2

by NUSCO, met with the Plaintiff at her home to address her concerns. [*Id.* at ¶ 17]. The Plaintiff alleges that, at the meeting, Carberry informed her that "it was the household appliances in her home that gave off high EMFs and that these were higher than EMFs from power lines." [*Id.*]. The Plaintiff now alleges that this information was false and misleading. [I*d.*]. According to the Plaintiff, by 1987, "there was sufficient published scientific evidence of risks of harm from EMFs accessible to and known to all Defendants to require implementation of appropriate measures to mitigate and reduce" the EMF exposure to the Plaintiff and her family. [*Id.* at ¶ 13]. Plaintiff asserts that despite her expressed concerns, Defendant did nothing to lower the EMF levels emitting from the power lines near the Plaintiff's home.

C. The Second Alleged Deception and Continued Failure to Act

In 1990, the Plaintiff contacted NU again, this time in regard to a *New Yorker* article. [*Id.* at ¶ 18]. According to the Plaintiff, however, instead of taking measures to ameliorate the situation, the Defendant sent her a letter "falsely stating that "extensive research had found 'no illness, disease, or adverse health effect' from EMFs.'" [*Id.*].

In September of that year, at the Plaintiff's request, NU measured the EMF levels inside her home, and found them ranging from 14 mG to 32 mG in the main living spaces. [*Id.* at ¶ 20]. NU sent a copy of the readings to UI. [*Id.*]. Thus, according to the Plaintiff, "Defendants NU and UI were fully aware from the 1990 measurements that the Plaintiff's home had been rendered uninhabitable by high levels of EMFs" emitted by the upgraded CL&P transmission lines. [*Id.* at ¶ 23].

3

Similar readings were repeated at the Plaintiff's request in 2007 and 2008,
confirming the continuous nature of these results. [*Id.* at ¶s 52-53].

    **D. The Plaintiff's Injuries**

    According to the Plaintiff's Complaint, in the years following CL&P's 1987
power line upgrade, the Plaintiff began experiencing a multitude of health
impairments and mental stresses, including diminishment in quality of life,
anxiety and emotional distress, cognitive decline, personality changes, and
abnormal cell growth. [Pl.'s Complaint, Dkt. # 22,  ¶s 38, 40].  For example, in
1990, the Plaintiff was diagnosed with a tumor in her humerus, followed by a
Lupus diagnosis two years later. [CL&P Defs.' Rule 56 Statement, Dkt. # 46-2, ¶¶
21, 22].  Moreover, at some point around that time, the Plaintiff began taking
medication for Alzheimer's disease. [*Id.* at ¶ 25].  In addition, as early as 1990, the
Plaintiff began experiencing anxiety and emotional distress related to the
physical conditions resulting from the EMF exposure. [Dkt. # 46-2 at ¶ 36].

    The Plaintiff claims that her injuries are not limited to herself, and that the
harms allegedly caused by EMF exposure also extended to members of her
family. According to the Plaintiff, during the period in question, the Plaintiff's
husband was diagnosed with a brain tumor and suffered an ischemic stroke.
[Dkt. # 22, ¶ 38].  Additionally, the Plaintiff and her family parted with four family
dogs that died over the course of the past two decades due to hyperthermia,
kidney failure and arthritis, cancer, and other unknown causes. [*Id.* at ¶ 39].

    In support of her claim that the foregoing injuries resulted from the
increased EMF levels in the Plaintiff's home, the Plaintiff offers scientific articles

and accompanying expert opinions linking EMF exposure with various health maladies [Dkt. #34 at pp. 17-18], including "mutations and cancer or other abnormal biological processes such as the development and growth of tumors" [Dkt. #35-1, p. 5], sleep disorders and immune system disturbances [Id. at ¶ 12], an increased risk of Alzheimer's disease and senile dementia [Dkt. #35-3 at pp. 17, 35], death from neurodegenerative diseases for those who live within 50 meters of 220-380 kV power lines [Id. at ¶ 13], childhood leukemia [Dkt. #35-2, ¶ 25], and asthma in offspring [Dkt. #35-3 at p. 42].  The Plaintiff's expert witnesses, Martin Blank, Ph.D., and David O. Carpenter, M.D, both opine that extensive reliable scientific research conducted over the past decade confirms that high levels of EMFs are potentially harmful to human health. [Declaration of Blank, Dkt. 35-1; Declaration of Carpenter, Dkt. # 35-2].  Indeed, according to Blank, "any long-term level of EMF above 3-4 mG would render a home unsafe and uninhabitable." [Dkt. # 35-1, ¶ 17].

    E. The UI Substation

    In April, 2007, UI measured the EMF levels inside Plaintiff's home at her request, and found them ranging from 17 mG to 22 mG in the main living spaces. [Dkt. #22, ¶ 52]  Also in 2007, in connection with approval for a new UI substation, NU instituted a procedure called reverse-phasing to reduce the EMF levels on the Plaintiff's property.  [Dkt. #22, ¶ 55].  Thus, the Plaintiff points out, not until two decades after the upgrade in question did the Defendants take the "readily available steps" to reduce the EMF levels in the Plaintiff's home. [*Id.* at  ¶¶  50, 55].  In January, 2008, an independent consultant hired by the Plaintiff to take

readings inside her home recorded EMF levels ranging from 12 mG to 19 mG in. [Dkt. #22, ¶ 53]  On May 2, 2008, UI's distribution line was de-energized. [UI's Statement, ¶ 7].

Nevertheless, even "such reduced level, however, was not," according to the Plaintiff, "sufficient to make the residence habitable." [Dkt. #22, ¶ 55]. Consequently, the Plaintiff asserts that "the abnormally high EMF exposure at 1500 Huntington Turnpike rendering it uninhabitable" continues today.  [*Id.* at ¶ 55].

On these grounds, the Plaintiff now alleges that the Defendants are liable for exposing her to unreasonable and harmful EMF levels for over two decades. Moreover, the Plaintiff also claims that Defendant NU engaged in several forms of fraud, deception, and misrepresentation in its efforts to eradicate her claims. [*Id.* at pp. 6-11]. Based on the foregoing facts and allegations, the Plaintiff now seeks relief in the form of compensatory and punitive damages amounting to $95,270,000. [*Id.* at p. 39].

### III. Procedural History

#### A. Prescott

In 1994, the Plaintiff commenced a lawsuit against NU in Connecticut Superior Court ("*Prescott*"), in which she sought damages and "a permanent injunction against NU to enjoin it from emitting harmful EMFs along the easement next to Plaintiff's home." [Dkt. #22 at ¶ 28].  In *Prescott*, the Plaintiff raised four causes of action against Defendant NU, including trespass (Count 1),

abandonment of easement (Count 2), nuisance (Count 3), and inverse condemnation (Count 4).

In response to the Plaintiff's claims, NU filed an affidavit of Mr. Carberry, an electrical engineer employed by NUSCO.  [Dkt. 31 at ¶s 5, 14].  In his affidavit, Carberry stated that the EMFs radiating from the power lines near the Plaintiff's home were of the kind present "around any conductor carrying current (such as the cord of a lamp that is turned on)." [Dkt. # 22 at ¶ 30].

Subsequently, in December of 1997, the case was tried in Bridgeport Superior Court. [Dkt. # 31 at ¶ 15]. At the trial, "counsel for the plaintiff stated that the plaintiff was no longer making a claim in this law suit that EMF was hazardous or dangerous and the plaintiff produced no evidence on that issue."  *Prescott v. Ne. Utilities*, CV 940315423S, 1998 WL 13942, *1 (Conn. Super. Ct. Jan. 6, 1998). The Plaintiff did, however, present evidence regarding the allegedly diminished value of her home as a result of the power line upgrade*. Id.*

At the conclusion of the Plaintiff's case, the Defendant moved for dismissal. The court reserved its decision on the motion, and heard the evidence presented by the Defendant's experts.  *Id.*  At that time, Carberry testified before the court that the EMF levels following the 1987 upgrade were "comparable" to those associated with the lines that existed before the upgrade.  [Dkt. # 22 at ¶ 34].  On January 6, 1998, the Superior Court dismissed the case on the grounds that the Plaintiff had failed to make out a *prima facie case* for each of her claims. [Dkt # 31 at ¶ 16].

7

The Plaintiff now claims that the affidavit and testimony of Carberry in *Prescott* were "deliberately false and misleading in order to defeat any court decision or injunction to require Defendants to reduce EMF levels next to plaintiff's home." [Dkt. # 36 at ¶ 4]. Thus, the Plaintiff alleges that its "failure of proof was a direct result of NU's and Carberry's fraudulent and deliberate concealment of true facts." [Dkt. 22 at ¶ 37].

The Plaintiff also alleges that, in the course of the 1994 state litigation, Carberry sent out a confidential letter to the Connecticut Siting Council, NU's attorneys, and UI's attorneys, stating that "'reverse phasing of these 115-kv lines would reduce their magnetic fields by more than 50%.'" [Dkt. #22 at ¶s 25-26]. On these grounds, the Plaintiff now argues that, up until 2007, when the Defendants instituted reverse phasing on the power lines to reduce their EMF emissions, the Defendants "intentionally and deliberately conceale[d] their ability to reduce the EMF levels" in the Plaintiff's home from both the Plaintiff and the Superior Court. [Dkt. # 36 at ¶ 5].

B. *Barnett I*

In 2008, the Plaintiff filed a federal action with this Court against NU, UI, and others ("*Barnett* I") by invoking the court's federal question jurisdiction. [Dkt. # 31 at  ¶ 17].  In *Barnett* I, the Plaintiff brought claims under both state and federal law, including various constitutional violations (Count 1); conspiracy (Count 2); breach of contract (Count 3); intentional infliction of emotional distress (Count 4); breach of duty of superior knowledge (Count 5); breach of fiduciary duty (Count 6); unlawful taking (Count 7); intentional nuisance (Count 8); unlawful

8

trespass (Count 9); breach of duty of possessor-occupier of land (Count 10); and misrepresentation and deceit (Count 11).

In response, the Defendants moved to dismiss counts four, five, and six of the Plaintiff's claims on the grounds that the Plaintiff had failed to state a claim upon which relief could be granted. [District Court's Ruling on the Defs.' Motion to Dismiss, Dkt. # 34-1, p. 35]. The Defendants also moved to dismiss counts three, five, six, seven, eight, nine and ten on *res judicata* grounds, suggesting that the claims were precluded by the 1994 state court action because they had been, or could have been, brought in the earlier action. [*Id.* at p. 33].

The court granted the Defendant's motion to dismiss count three as to Defendant UI, and counts four, five and six as to all defendants, but denied the Defendants' motion to preclude counts three, seven, eight, nine, and ten, finding that, while it "may be in a better position to evaluate any preclusive effect of the prior state court judgment at the close of discovery and upon review of the entire record," *res judicata* was not "at this stage in the proceedings, a bar to recovery." [*Id.* at 34]. The case thus proceeded to discovery in regard to the Plaintiff's remaining state and federal claims, after which the Plaintiff and the Defendants moved for summary judgment. [Dkt. # 31 at ¶ 19].

On March 11, 2010, the court issued its ruling on *Barnett* I. [*Id.* at ¶ 20]. The court granted summary judgment in favor of the Defendants in regard to the Plaintiff's federal claims and declined to exercise supplemental jurisdiction over the Plaintiff's remaining state claims. [*Id.*]. Although the Plaintiff had moved to Arizona in September of 2009, more than a year after the case was filed, at no

time did the Plaintiff assert to the District Court that it had diversity jurisdiction over her state law claims.  [*Id.* at ¶¶ 17, 22].  The Court's decision granting summary judgment and declining to grant supplemental jurisdiction over the Plaintiff's state claims was later affirmed by the Second Circuit Court of Appeals. [*Id.* at ¶ 21].  On October 3, 2011, the Supreme Court declined to grant certiorari for the case. *Barnett v. Carberry*, 132 S. Ct. 248 (2011).

C. The Present Action

On June 27, 2011, the Plaintiff commenced this diversity action against the Defendants to resolve the state claims left unadjudicated in *Barnett* I, along with four additional claims.  The Plaintiff brings her case based on evidence that she asserts was not available at the time of the 1994 state action, including expert opinions and recent scientific articles linking EMF exposure with various health maladies. [Dkt. #22 at pp. 17-18]. According to the Plaintiff, "[t]his proof of actual EMF harm to human health was absent from the record in [*Prescott*] because the harmful effects of EMFs were still being researched and a matter of debate in 1994," whereas "the results of the research are now available and continue to mount up." [Dkt. #22 at p. 18].

The Defendants now move for summary judgment on the grounds that the Plaintiff's claims must fail as a matter of law.

### IV. Standards of Review

A.  Standard for Summary Judgment

"The standards governing summary judgment are well settled." *Ford v. Reynolds*, 316 F.3d 351, 354, 379 (2d Cir. 2002).  Summary judgment "should be

rendered if the pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of[its] case with respect to which [it] has the burden of proof." *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." *Ford,* 316 F.3d 101, 105 (2d Cir. 2002). "[T]he burden on the moving party may be discharged by 'showing'- that is pointing out to the district court- that there is an absence of evidence to support the nonmoving party's case." *PepsiCo. Inc. v. Coca-Cola Co.,* 315 F. 3d 101, 105 (2d Cir. 2002) (internal citations omitted).  "If the party moving for summary judgment demonstrates the absence of any genuine issue of material fact, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor." *Burt Rigid Box, Inc. v. Travelers prop. Cas. Corp.,* 302 F.3d 83, 91 (2d Cir. 2002).

The Court must "construe the evidence in the light most favorable to the nonmoving party and…draw all favorable inferences in its favor." *Huminski v. Corsones*, 396 F.3d 53, 69-70 (2d Cir. 2004) (internal citations omitted).  "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied.  *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315 (2d Cir. 2006) (internal citations omitted).

**B. Standard for Judgment on the Pleadings**

"After the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings" pursuant to Fed. R. Civ. P. 12 (c). A motion for judgment on the pleadings is decided on the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Hayden v. Paterson*, 594 F.3d 150, 159 (2d Cir. 2010). Thus, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion under Rule 12(b)(6) or 12(c), the Court should follow a "two-pronged approach" to evaluate the sufficiency of a complaint. *Hayden,* 594 F.3d at 161. "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to assumption of truth.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949-50). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" Id. (quoting *Iqbal*, 129 S. Ct. at 1950). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a Defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (internal quotation marks omitted).

**V. Discussion**

### A.  Res Judicata

The Defendants argue that the Plaintiff's claims are barred on *res judicata* grounds because they were, or could have been, brought in one or both of the Plaintiff's prior two actions. Under both Connecticut and federal law, the doctrine of *res judicata* provides that "a final judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim." *Dontigney v. Roberts*, 73 Conn. App. 709, 710 (2002); *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n. 5 (1979). The preclusive doctrine of *res judicata* is "based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate." *Honan v. Dimyan,* 63 Conn. App. 702, 707-08 (2001).   Thus, *res judicata* bars not only those claims actually asserted in a prior proceeding, but rather, "serves as an absolute bar to a subsequent action involving any claims relating to such cause of action that were actually made or that might have been made" in a prior action. *Legassey v. Shulansky*, 28 Conn. App. 653, 656 (1992); *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

Connecticut principles of res judicata have adopted the "theory of merger and the transactional test set out in the Restatement (Second) of Judgments. *Legassey*, 28 Conn.App. at 656 (citations omitted). Under the theory of merger, "[w]hen the plaintiff recovers a valid and final personal judgment, his original claim is extinguished and rights upon the judgment are substituted for it. The plaintiff's original claim is said to be 'merged' in the judgment." *Id.* (quoting 1 Restatement (Second), Judgments § 18). "The transactional test measures the

preclusive effect of a prior judgment, which includes any claims relating to the cause of action that were actually made or might have been made." *Id.* (quoting *Vakalis v. Kagan*, 18 Conn.App. 363, 367 (1989)). For purposes of the transactional test, a cause of action is "the group of facts which is claimed to have brought about an unlawful injury to the plaintiff." *Id.* (quoting *Bridgeport Hydraulic Co v. Pearson*, 139 Conn. 186, 197 (1952).

In this case, Defendants CL&P, NU, and NUSCO ("CL&P Defendants"), and Defendant UI collectively claim that the Plaintiff's claims are barred because they were, or could have been, presented before this court in *Barnett I*.  Moreover, the CL&P Defendants argue that, even if the claims against them are not barred by *Barnett I*, they are entitled to judgment as a matter of law because the Plaintiff had a prior opportunity to litigate her claims against them before the Connecticut Superior Court in *Prescott.*

### 1. *Barnett I*

First, in support of their *res judicata* defense, CL&P Defendants and Defendant UI argue that the Plaintiff's claims are barred in their entirety because the Plaintiff had the opportunity to litigate her claims before this court in *Barnett I*.  Plaintiff's 2008 federal action against the CL&P Defendants and Defendant UI, alleging various federal and state claims arising out of alleged injuries sustained through exposure to EMFs emitted from power lines near her home, invoked the court's jurisdiction on the basis of federal question and not diversity.  After dismissing counts four through six of the Plaintiff's state claims, this court subsequently granted summary judgment in favor of the Defendants as to the

Plaintiffs' federal claims and declined to exercise supplemental jurisdiction over the remaining state claims.  Although the Plaintiff had relocated to Arizona prior to the court's final ruling, at no time did she invoke the court's diversity jurisdiction over her state claims.

The Plaintiff subsequently brought this diversity action, re-alleging the state claims from *Barnett I* (counts one through five), and bringing four new claims (counts six through nine).  The Plaintiff does not now dispute the fact that her claim in the present action is based upon the same transaction as in *Barnett I*. [Dkt. # 34]. Indeed, the Plaintiff herself concedes that counts one through five are "the same state law claims" set forth in *Barnett I*.  [*Id.* at pp. 3, 4].  Instead, she argues that because the court declined to consider her state claims in that action, they are not barred based on *res judicata* because they have not yet been decided on the merits. [*Id.* at p. 5].

In rebuttal, the Defendants argue that the Plaintiff's claims are now precluded because the Plaintiff had a full and fair opportunity to litigate her claims before this court in *Barnett* I.  In so arguing, however, the Defendants do not attempt to show that the Plaintiff's state claims were decided on the merits. Rather, the Defendants argue that because the Plaintiff moved to Arizona prior to the end of the last litigation, she could have invoked the court's diversity jurisdiction to have her state claims resolved at that time.  [Dkt. 30-1, p. 17].

In so arguing, the Defendants disregard Second Circuit precedent.  Under *LeBlanc v. Cleveland*, 248 F.3d 95 (2d Cir. 2001), the Plaintiff had no obligation to invoke jurisdiction that did not exist at the time of her filing in May of 2008.  *See*

*id.* at 100 (holding that the plaintiff's residency status at the time of filing is controlling as to jurisdiction).  Therefore, where Plaintiff's move to Arizona following the filing of her lawsuit did not impose an obligation upon her to raise diversity jurisdiction, Plaintiff's state claims in *Barnett I* were not adjudicated on the merits when the court declined to exercise supplemental jurisdiction over them.  Thus, Plaintiff's state law claims raised in *Barnett I* are not precluded in the current action for failure to invoke the court's diversity jurisdiction.

The present action undisputedly and admittedly arises from the same nucleus of operative fact as *Barnett I*.  In that action, the court dismissed several of Plaintiff's state claims for failure to state a claim, constituting a final judgment on the merits. *See Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 399 n. 3 (1981) (holding that dismissal for failure to state a claim constitutes a final judgment on the merits).

The Plaintiff failed to allege counts six through nine of her present lawsuit in that action.  Counts six through eight of the present action all stem from Defendant NU's conduct in *Prescott*, the Plaintiff's 1994 state court action.  Count nine is based upon the same factual grounds that existed in *Barnett I,* the Plaintiff's 2008 federal case.  The Plaintiff does not suggest otherwise, and makes no attempt to show that her new claims could not have been brought before this court in *Barnett I*.  Thus, counts six through nine of the Plaintiff's complaint, asserting federal claims, are now barred, because the Plaintiff could have, but failed to, raise them in *Barnett I*. *See Legassey*, 28 Conn. App. at 656 (under the transactional test utilized by Connecticut res judicata law, a prior final judgment

16

on the merits precludes claims predicated upon the same facts which could have been raised but were not actually raised in the prior case).

Conversely, because the *Barnett I* court declined to exercise supplemental jurisdiction over counts one through five, Plaintiff's state law claims, and the Plaintiff did not pursue those claims in state court, those claims were not decided on the merits in Plaintiff's prior federal action or a state court action. Accordingly, judgment is hereby denied in regard to those claims.


### 2. *Prescott*

#### a.  The CL&P Defendants' *Res Judicata* Claim

The court must therefore now consider the CL&P Defendants' claim that counts one through five of the Plaintiff's action are precluded by the Connecticut Superior Court's ruling in *Prescott*.  When determining the preclusive effect of a state court action based on *res judicata*, this court is required, under the Federal Full Faith and Credit Statute, to give a state judgment the same preclusive effect that would be accorded by the rendering state.  To this end, the court must apply the preclusion rules of the state whose substantive law applies. *SE Techs., Inc. v. Summit Electric Supply,* 392 F.Supp.2d 399, 401 n.3 (D. Conn. 2005) (stating that "the preclusive effect of a judgment in a diversity case is determined by applying the preclusion rules of the state whose substantive law applies."); *see also Ross v. New Canaan Envt'l. Comm'n,* CIV.3:09CV01966PCD, 2010 WL 2351475 (D. Conn. June 8, 2010) ("According full faith and credit to a state court's judgment entails applying that state's doctrines of collateral estoppel and *res judicata.*").   Thus,

whether *Prescott* precludes this action in regard to the Plaintiff's claims against the CL&P Defendants must be analyzed under the preclusion rules of Connecticut.

To begin, as subsidiaries of NU, CL&P and NUSCO, the three CL&P Defendants are in privity with one another*. See Ventres v. Goodspeed Airport, LLC*, 301 Conn. 194, 206-07 (Conn. 2011) (finding privity "when there exists such an identification in interest of one person with another as to represent the same legal rights so as to justify preclusion"); *see also Dontigney v. Roberts*, 73 Conn. App. 709 (Conn. 2002) (holding that *res judicata* bars relitigation of the same claim against the same parties and those in privity with the parties); *Barnett v. Carberry*, No. 08cv714(AVC), 2009 WL 902396, at *14, n. 11 (D. Conn Mar. 30, 2009) (holding that CL&P and NU are in privity as in CL&P is an NU subsidiary). Thus, insofar as *Prescott* bars this action against NU, NUSCO and CL&P will also be precluded from suit.

As previously discussed, under Connecticut law, whether two actions constitute relitigation of the "same claim" for *res judicata* purposes depends not on whether the causes of action in each case are identical, but rather, on "whether the prior and present actions stem from the same transaction" or "series of connected transactions out of which the [prior] action arose." *Weiss v. Weiss*, 297 Conn. 446, 459 (Conn. 2010). "What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial

18

unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* at 461.  Put another way, "a cause of action for the purpose of the transactional test is the group of facts which is claimed to have brought about an unlawful injury to the plaintiff." *Legassey,* 28 Conn. App. at 657.  Ultimately, determinations based on *res judicata* must be made in light of the particular facts of in each case in order to best promote the purposes of *res judicata*, which include promoting judicial economy, minimizing repetitive litigation, preventing inconsistent judgments and providing repose to parties. *Isaac v. Truck Serv., Inc.,* 253 Conn. 416, 422, 752 A.2d 509, 513 (Conn. 2000) ("*res judicata* should be applied as necessary to promote its underlying purposes.").

　　In this case, the Plaintiff's claims stem from the same transaction previously litigated in *Prescott*.  In *Prescott*, the Plaintiff filed an action against NU in state court alleging that "in the year of 1987, when the Defendant erected additional towers, poles, wires, with appurtenance thereto, said additional towers, poles and wires emitted what are known as electromagnetic fields, a dangerous form of radiation that has been known to increase health risks in humans." [Dkt. # 25, ¶ 8].

　　Similarly, counts one through five of the present case, which include breach of contract, unlawful taking, private nuisance, unlawful trespass, and breach of duty of possessor-occupier of land, respectively, all stem directly from the Defendants' 1987 installation of upgraded power lines and the EMF radiation thereafter emitted.  Stated in the words of the Plaintiff's complaint, this action is

"based on the secret emissions of unreasonably high electromagnetic fields emitted from power transmission and distribution lines installed and operated by Defendants." [Dkt. # 22, p. 1].

Therefore, because *Prescott* and the action at hand stem from identical facts and events, the Connecticut Superior Court's judgment constitutes a judgment on the merits of the same transaction complained of here. *See Rosenfield v. Cymbala*, 43 Conn. App. 83, 85-6 (Conn. App. Ct. 1996) (holding that judgment of dismissal for the plaintiff's failure to make out a *prima facie case* is a judgment on the merits to which the doctrine of *res judicata* applies). Consequently, the Plaintiff's claims are now barred in their entirety as to the CL&P Defendants.

### b. The Plaintiff's Argument

The Plaintiff argues, however, that *res judicata* does not preclude her case because her present claims are based on new evidence, including new scientific studies connecting EMFs to health problems, that was not available at the time of the prior action.  [Dkt. # 34 at p. 18].  Moreover, the Plaintiff argues that the issues in this case "were not, and could not, have been raised before the Connecticut Superior Court in 1994" because "this case is about continuing abusive conduct toward plaintiff and her family… not about a single tort in the early 1990's." [*Id.* at p. 13].  Furthermore, the Plaintiff's complaint suggests that the ruling in *Prescott* was obtained by fraud on the part of the Defendants, and therefore cannot have preclusive effect.  Finally, the Plaintiff asserts that this Court's ruling in *Barnett* I

20

precludes the court from granting the Defendants' motion.  All of the plaintiff's arguments are unavailing.

Further, if as Plaintiff states, *res judicata* does not preclude her case because her present claims are based on new evidence, including new scientific studies connecting EMFs to health problems, that was not available at the time of the prior action, it would appear that she has admitted that the Defendants could not have known that the power transmission and distribution lines were harmful as she claims before her prior action. By the same token, she has tacitly admitted that the Defendants could not have known that their statements about the health effects of power transmission and distribution lines were erroneous, much less fraudulent, and that they deliberately concealed known harms as she claims.

### i. New Evidence

The Plaintiff's assertion that procurement of new evidence provides a bar to *res judicata* must fail.  It is well settled under Connecticut law that, insofar as a claim constitutes reassertion of a prior claim, the subsequent action will be barred in its entirety, "regardless of what additional or different evidence or legal theories might be advanced in support of it." *See Weiss,* 297 Conn. at 463; *see also Honan v. Dimyan*, 63 Conn. App. 702, 709 (Conn. App. Ct. 2001) (holding that "the plaintiffs cannot reassert their claim by proffering additional or new evidence").  Here, the Plaintiff offers no reason for the court to find that advances in the scientific community warrant an exception to this rule. Indeed, the court finds that such an exception would swallow the rule, opening the floodgates to

repetitive litigation contrary to the purposes of *res judicata*.  Were the Plaintiff permitted to bring a new suit based on advances in scientific research, the court would, in essence, be granting permission for unlimited lawsuits by the Plaintiff in the future, so long as the new research "continue[s] to mount up." [Dkt. # 34, p. 18].  Thus, to best promote a balance between the Plaintiff's interest in litigating her claim with the important concerns of preserving court resources and allowing for repose among parties, the Plaintiff's argument must fail as a matter of law.[1]

### ii. Continuous Conduct

Similarly, once a judgment has been rendered on the merits, the Plaintiff cannot avoid *res judicata* by alleging additional instances of previously asserted conduct that do not amount to a new claim. While not binding in this instance, recent Second Circuit decisions are instructive in so holding.  *See Jean-Gilles v. County of Rockland,* 463 F.Supp.2d 437, 454 (S.D.N.Y. 2006) ("The doctrine of *res judicata* applies to facts learned after the filing of the earlier complaint when such facts are merely additional examples of the earlier complained-of conduct."). Here, the Plaintiff attempts to bolster her claim by alleging additional health injuries and continued instances of Defendants' failure to take corrective action.

---

[1] A continuing course of conduct does not give rise to a new cause of action where the facts underlying the action previously disposed of are the same as the new action.  See *N.L.R.B. v. United Technologies Corp.,* 706 F.2d 1254, 1259-61 (2d Cir. 1983) (applying collateral estoppel even though some new developments had occurred, while foreclosing res judicata because the claim at issue was not the same claim previously adjudicated); *Davis v. Halpern,* 813 F.2d 37, 40 n. 4 (2d Cir. 1987) (holding that suit was not barred by a prior action where different circumstances upon which an argument of discrimination could be made were present, and noting that "a continuing course of conduct, if true, often creates a new and separate claim, not barred by the decision in a single prior suit.").

Such allegations of "continuing abusive conduct" do not, however, provide grounds for the Plaintiff to re-try her case. *See Waldman v. Vill. of Kiryas Joel,* 207 F.3d 105, 113 (2d Cir. 2000) (finding that a claim alleging "additional instances of what was previously asserted" was barred under *res judicata*); *see also Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 383-84 (2d Cir. 2003) (finding that claim preclusion is appropriate "where some of the facts on which a subsequent action is based post-date the first action but do not amount to a new claim")*; see also U.S. Info. Sys., Inc. v. Int'l Broth. of Elec. Workers Local Union No. 3, AFL-CIO*, 07 CIV. 127 (MGC), 2008 WL 4090143 (S.D.N.Y. Sept. 2, 2008) (finding that *res judicata* is not barred based on new conduct where "the facts essential to the second claim were already present in the first suit"). After all, as the Defendants suggest, an activity that has been determined by a judgment not to constitute a nuisance, trespass, taking, breach of duty, or breach of contract as a matter of law cannot become one simply by the passage of time. [Dkt. # 30-1, p. 21]. Finding otherwise would defeat the underlying principles of *res judicata* by sacrificing judicial economy and risking inconsistent judgments. Therefore, the Plaintiff's claim that *res judicata* cannot bar a suit regarding a "continuous course of conduct" after a judgment has been rendered in regard to that conduct is without merit.

### iii. Fraud and Misrepresentation

Finally, the Plaintiff alleges that the Connecticut Superior Court's decision in *Prescott* was "a direct result of NU's and Carberry's fraudulent and deliberate concealment of true facts." [Dkt. # 22, ¶ 37]. In particular, the Plaintiff alleges

that Carberry, an expert witness for NU, made misstatements in both his affidavit to and his testimony before the Superior Court by downplaying the high levels of EMFs at the Plaintiff's property, and describing the EMF levels subsequent to the upgrade as "comparable" to those before the upgrade.  [*Id.* at ¶s 32-37]. Moreover, the Plaintiff alleges that Defendant NU failed to disclose the availability of procedures that could reduce the EMF levels at the Plaintiff's home.  [*Id.* at ¶ 36].

      In essence, Plaintiff's fraud claims challenge the judgment entered by the Connecticut Superior Court in *Prescott*.  As such, Plaintiff's claims are barred by the *Rooker-Feldman* doctrine. In "Rooker and Feldman . . . [The United States Supreme Court] established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hobclock v. Albany County Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). Suits which are "'inextricably intertwined' with any state court judgment . . . ,cannot be brought in a federal district court." *Goldberg v. Roth*, No. 99-cv-1191, 2001 WL 1622201, at *4 (S.D.N.Y. Dec. 17, 2001) (quoting *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 199-200 (2d Cir. 1996). "The issues raised in a plaintiff's complaint are inextricably intertwined with a state court judgment if the federal claim would succeed only if the state court wrongly decided the issue." *Dockery v. Cullen & Dykman*, 90 F. Supp. 2d 233, 236 (E.D.N.Y. 2000), *aff'd*, 2 Fed. Appx. 78 (2d Cir. 2001).

      Here, Plaintiff's fraud claims are inextricably intertwined with the Connecticut Superior Court's judgment in *Prescott* because if Plaintiff were to

succeed in proving her fraud claim in the instant case by establishing that the testimony offered by the Defendant in *Prescott* misrepresented the level of EMFs present in Plaintiff's home, the judgment in *Prescott* would have been wrongly decided. Accordingly, where Plaintiff's fraud claim in essence seeks to attack the judgment of a Connecticut state court, this court lacks subject matter jurisdiction to adjudicate these claims. *See Goldberg*, 2001 WL 1622201, at *4 ("To the extent that the Complaint attempts to attack the determinations reached by the state courts, the federal courts lack subject matter jurisdiction to decide these claims under the *Rooker-Feldman* doctrine.") (citation omitted).

### iv. The Plaintiff's *Res Judicata* Claim

Alternatively, the Plaintiff also defends her claim by alleging that the Defendants' motion for summary judgment on *res judicata* grounds is precluded by this court's ruling in *Barnett I*.  [Dkt. # 34, p. 3].  In that case, the Defendants moved to dismiss the Plaintiff's state claims under *res judicata*, arguing that they had been duly litigated in *Prescott*.  On March 3, 2009, the Court declined to dismiss the Plaintiff's state claims, finding that *res judicata* was not, at that stage of the proceedings, a bar to recovery. Subsequently, however, on March 11, 2010, the court granted summary judgment to the Defendants as to the Plaintiff's federal claims.  At that time, the Court declined to exercise supplemental jurisdiction over the state law claims and in so doing declined to adjudicate the merits of those claims.

The court's judgment in this case is wholly consistent with its earlier ruling in *Barnett I*.  Consistent with Connecticut law, this court recognizes that summary

judgment, and not dismissal for failure to state a claim, "is the appropriate method for resolving a claim of *res judicata.*"  *Dontigney,* 73 Conn. App. at 710. Therefore, the court's decision to grant summary judgment on *res judicata* grounds is in no way precluded by its prior declination to adjudicate the motion to dismiss.

In conclusion, counts one through five of the Plaintiff's claims are barred under *res judicata* as alleged against the CL&P Defendants because (1) the Plaintiff's assertion of new evidence does not warrant a new trial under Connecticut law, (2) the fact that the Defendants' complained-of conduct continued following the *Prescott* judgment does not give rise to a new claim, (3) pursuant to the *Rooker-Feldman* doctrine, this Court lacks subject matter jurisdiction over Plaintiff's attempt to collaterally attack the *Prescott* judgment, and (4) such a ruling is consistent with this Court's judgment in *Barnett* I. Moreover, our review of the facts and circumstances of this case indicates that the purposes of *res judicata* are best preserved by holding to the state court's judgment in *Prescott.*  Therefore, because the Plaintiff had the opportunity to fully litigate counts one through five in *Prescott,* they are now barred as alleged against the CL&P Defendants.

B.  The Plaintiff's Claims Against Defendant UI

Defendant UI was not a party to *Prescott.*  We therefore next consider the Plaintiff's remaining claims as alleged against UI.  Because this Court dismissed the Plaintiff's contract claim against UI in *Barnett* I, the Plaintiff does not allege count one against UI.  [Dkt. # 38, p. 7]. Thus, count one is no longer at issue in

this case. As to counts two, three, four, and five of the Plaintiff's case, UI moves for summary judgment on *res judicata* grounds, or, alternatively, judgment on the pleadings as to each of the Plaintiff's claims. In the alternative, the Defendant also moves for summary judgment on the grounds that each of the Plaintiff's claims is time-barred under either the statute of limitations or the doctrine of laches.

### 1. *Res Judicata*

To begin, Defendant UI claims that it has an independent *res judicata* defense based on *Barnett I.* According to UI, the court dismissed all of the state law claims against UI in that action.  [Dkt. # 33, p. 6].  Therefore, UI argues that it is entitled to summary judgment as to the Plaintiff's claims on *res judicata* grounds. [*Id.*].  Consideration of the judgment in *Barnett* I, however, reveals the Defendant's claim to be wholly without merit.

In *Barnett I*, the Plaintiff alleged several federal and state claims against the Defendant.  Upon Defendant's motion to dismiss, the Court declined to dismiss the majority of the Plaintiff's state claims, including each of the state claims re-alleged against UI in this case. [Dkt. # 68, p. 26].  This Court's ruling on the Defendants' motion to dismiss in *Barnett* I reads in relevant part: "The court concludes that the allegations in the second amended complaint...are sufficient to state a claim against UI at this stage of the pleadings.  The issue of UI's liability, if any, is more appropriately addressed after the close of discovery and upon a review of the entire record." [Dkt. # 68, p. 26].  The Court then goes on to dismiss the Plaintiff's contract claim against UI, as well as several of the

27

Plaintiff's state claims against both the CL&P Defendants and UI, demonstrating that UI's liability as to the Plaintiff's state claims remains at issue as to those claims which the Court declined to dismiss.  [*Id.* at p. 35].

In light of the foregoing judgment, UI's motion for summary judgment on *res judicata* grounds is unavailing in so far as UI reiterates state claims asserted in *Barnett I*.  The Court in *Barnett* I did not dismiss the Plaintiff's state claims against Defendant UI.  Rather, in that case this Court *declined* to dismiss the Plaintiff's claims on a 12(b)(6) motion.  Subsequently, the Court granted summary judgment against the Plaintiff on her federal claims and declined to exercise supplemental jurisdiction over her remaining state claims against both CL&P and UI.  Consequently, the Defendant's motion for summary judgment under *res judicata* is hereby denied.

### 2. Motion for Judgment on the Pleadings

The Defendant also moves for judgment on the pleadings as to the Plaintiff's claims on the grounds that the Plaintiff has failed to state any claim on which relief may be granted.  As discussed above, judgment on the pleadings is determined by the same standard as a motion to dismiss. *Hayden*, 594 F.3d at 159.

### a.  Plaintiff's Issue Preclusion and Estoppel by Record Argument

As a preliminary matter, the Court must consider the Plaintiff's argument that the Defendant is barred from moving for judgment on the pleadings under the issue preclusion branch of *res judicata* and the doctrine of estoppel by record. Unlike claim preclusion, which bars repetitive claims in their entirety,

28

issue preclusion dictates that a party will be barred from litigating for a second time an issue of fact or law that has already been litigated and decided in a prior action. *Murphy v. Gallagher*, 761 F.2d 878, 879 (2d Cir. 1985). Similarly, "the rule of estoppel by record bars a second action between the same parties on an issue necessarily raised and decided in the first action."  31 C.J.S. Estoppel and Waiver § 8.

As explained above, in *Barnett* I, the Court declined to dismiss the Plaintiff's state claims for taking, nuisance, trespass, and breach of duty of occupier/possessor of land on the grounds that the allegations in the complaint were sufficient to state a claim at that initial stage of the proceedings.  The Court later granted summary judgment as to the Plaintiff's federal claims and declined to exercise supplemental jurisdiction over the remaining state claims.  Thus, at no time did the Court render a final judgment on those claims and thus the Defendant's challenges to those claims are not precluded by the doctrine of *res judicata*. *Weiss,* 297 Conn. at 488. ("Only claims that have been litigated to a final judgment are subject to the preclusive effect of the doctrine *of res judicata.*").

Plaintiff instead asserts that the Defendant's motion is barred by the doctrine of issue preclusion *res judicata* and by the doctrine of estoppel by record. According to the Plaintiff, because the Court declined to dismiss the same state court claims alleged here in *Barnett* I, the doctrines of issue preclusion and estoppel by record now bar the Defendant from moving for judgment on the pleadings as to those claims. [Dkt. # 38, p. 9].  This argument is fundamentally misguided. The Plaintiff seeks to circumvent the doctrine of claim

preclusion's requirement that a final judgment be rendered as to a claim before it will have preclusive effect by mis-classifying the Court's decision not to rule on Defendant's motion to dismiss as a legal issue subject to issue preclusion.  *See Efthimiou v. Smith,* 268 Conn. 499, 506-507 (Conn. 2004) (holding that issue preclusion "is that aspect of *res judicata* that prohibits the relitigation of an *issue* when that issue was actually litigated and necessarily determined in a prior action between the same parties or those in privity with them *upon a different claim.*").  Such erroneous logic cannot prevail.  The Defendant cannot now be barred from moving for judgment on pleadings which are unique to this case based on the Court's prior ruling in regard to the wholly distinct pleadings in *Barnett I.*  Consequently, the Defendant's motion for judgment on the pleadings is not barred, and the Court must now consider, for the first time, whether the Plaintiff's complaint in this case has succeeded in stating any of her remaining claims against Defendant UI.

### b. Takings

Under Connecticut law, a "taking" means "the exclusion of the owner from his private use and possession, and the assumption of the use and possession" by the defendant.  *Bishop v. New Haven,* 82 Conn. 51, 58, 72 A. 646 (Conn. 1909). Such a "taking" need not be physical, but may also occur where there is any "substantial interference with private property which destroys or nullifies its value or by which the owner's right to its use or enjoyment is in a substantial degree abridged or destroyed." *Santini v. Connecticut Hazardous Waste Mgmt. Serv.,* 251 Conn. 121, 138-39 (Conn. 1999); s*ee also Tamm v. Burns*, 222 Conn.

280, 284 (Conn. 1992) (internal citations and quotation marks omitted) ("Although property may be 'taken' without any actual appropriation or physical intrusion, there is no taking in a constitutional sense unless the property cannot be utilized for any reasonable and proper purpose.").

Here, the Plaintiff alleges that the Defendant, in collaboration with CL&P, operated its power lines in such a manner that it caused her and her family physical injury and rendered her property "uninhabitable, unmarketable, and without value for the purpose for which the Plaintiff purchased it and used it, depriving the Plaintiff of the value of her home." [Dkt. # 22, p. 24].  Taking the Plaintiff's allegations as true, the Plaintiff has therefore stated a claim for unlawful taking. *See id.* (holding that a taking may occur "where the economic utilization of the land is, for all practical purposes, destroyed"). Thus, the Defendant's motion for judgment on the pleadings as to the Plaintiff's second claim for relief is denied.

### c. Private Nuisance

The Plaintiff has also stated a claim against Defendant UI for private nuisance.  "A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Pestey v. Cushman*, 259 Conn. 345, 352 (Conn. 2002) quoting 4 Restatement (Second), Torts § 821D (1979).  To recover on a claim for private nuisance, a plaintiff must show that the defendant caused "an unreasonable interference with the plaintiff's use and enjoyment of his or her property." *Id.* at 361.  Whether the interference is unreasonable depends upon a balancing of the interests involved under the circumstances of each individual

case." *Id.* Thus, "[c]onsideration must be given not only to the interests of the person harmed but also [to] the interests of the actor and to the interests of the community as a whole." *Id.* at 352. "Ultimately, the question of reasonableness is whether the interference is beyond that which the plaintiff should bear, under all of the circumstances of the particular case, without being compensated." *Boyne v. Town of Glastonbury,* 110 Conn. App. 591, 603-04, 955 A.2d 645, 655 (Conn. App. Ct. 2008) (quoting *Pestey*, 259 Conn. at 362).

Here, the Plaintiff alleges that the Defendant improperly used the easement on the Plaintiff's property in such a way as to cause dangerous levels of EMF radiation to invade her home, resulting in various harms and injuries to the Plaintiff and her family, and interfering with the use and value of her property. Plaintiff's claim that the Defendant exceeded the scope of the easement and unreasonably interfered with her use and enjoyment of her land resulting in injury sufficiently states a claim of private nuisance. *See Peterson v. Town of Oxford*, 189 Conn. 740, 746 (Conn. 1983) (holding that where use of an easement exceeds its intended scope, such unreasonable use may constitute nuisance). The question of the reasonableness of this conduct, necessitating a balancing of the interests involved, in particular, the public interest in the provision of power, and the interest of Plaintiff and her family in being free from harmful radiation, presents a question of fact best resolved either on a motion for summary judgment, after the benefit of discovery, or at trial. *See Pestey*, 259 Conn. at 359 (holding that an industrial enterprise, which serves society well, may nevertheless be liable to pay for the "inevitable harm caused to neighbors").

Accordingly, the Defendant's motion for judgment on the pleadings is denied as to her third claim for relief against Defendant UI.

### d. Trespass

While the Plaintiff has successfully stated a claim for nuisance, or "a nontrespassory invasion," she has not sufficiently alleged a claim for trespass. The elements of an action for trespass are: "(1) ownership or possessory interest in land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) done intentionally; and (4) causing direct injury." *City of Bristol v. Tilcon Minerals, Inc.*, 284 Conn. 55, 87-88 (Conn. 2007) (citing *Avery v. Spicer,* 90 Conn. 576, 579 (Conn. 1916)). "[B]ecause it is the right of the owner in possession to exclusive possession that is protected by an action for trespass, it is generally held that the intrusion of the property be physical and accomplished by a tangible matter. Thus, in order to be liable for trespass, one must intentionally cause some substance or thing to enter upon another's land." *Abington Ltd. P'ship v. Talcott Mountain Science Ctr. for Student Involvement, Inc.,* 43 Conn. Supp. 424, 427-28 (Conn. Super. Ct. 1994). Consequently, "all intangible intrusions…are dealt with as nuisance cases, not trespass." *Id.* Plaintiff has already asserted a nuisance claim.

In cases such as this, "the passage of electricity through transmission lines on utility poles can properly fall into the category of intangible intrusion." *Id.* at 428. Thus, because the Plaintiff's claim is based entirely on the alleged intrusion of intangible EMFs into her home, her action in trespass fails as a

matter of law.  Therefore, the Plaintiff's fourth claim for relief against Defendant UI is hereby dismissed.

### e. Breach of Duty of Possessor/Occupier of Land

The Plaintiff has also failed to state a claim for breach of duty of possessor/occupier of land.  Under the common law duty now alleged against UI, "a possessor of land has a duty to an invitee to reasonably inspect and maintain the premises in order to render them reasonably safe."  *Morin v. Bell Court Condo. Ass'n, Inc.*, 223 Conn. 323, 327 (Conn. 1992).  Moreover, "the possessor of land must warn an invitee of dangers that the invitee could not reasonably be expected to discover." *Id.* A party will be classified as an invitee if she falls into one of "two classes: (1) those who enter as members of the public for a purpose for which the land is held open to the public; and (2) those who enter for a purpose connected with the business of the possessor."  Restatement (Second) of Torts § 332 (1965); *see Kurti v. Becker*, 54 Conn. App. 335, 338 (Conn. App. Ct. 1999) (defining "invitee" in accordance with the Restatement.).

The Plaintiff curiously alleges that the Defendant's "continuous unreasonable use of the easement on the Plaintiff's land constitutes possession and occupation.  As possessor-occupier of Plaintiff's land, Defendant owed Plaintiff, her family, and all other reasonably foreseeable entrants upon the property a duty of reasonable care." [Dkt. # 22, p. 29].  Even when viewed in a light most favorable to the Plaintiff, the facts alleged in the complaint do not remotely constitute a claim for breach of duty of possessor/occupier of land.  The Plaintiff cites no authority what so ever to establish a reasonable belief that an

invitee "is the functional equivalent of an owner who retains the right to use of land" under the law of any jurisdiction much less this state.  [Dkt. # 37, p. 28]. This court has found no authority which even remotely supports the existence of such a claim. Here, the Plaintiff herself was the possessor and owner of the property in question.  She was not on the land as either a public or a business invitee to whom the Defendant owed a duty of care.  Accordingly, the Defendant's motion for judgment on the pleadings is granted and the Plaintiff's fifth claim for relief is dismissed.

In summary, Defendant's motion for judgment on the pleadings in regard to counts two and three is denied and as to counts four and five granted.

### 2.  Statute of Limitations

As to the Plaintiff's remaining claims, Defendant UI now moves for summary judgment on the grounds that they are untimely. [Dkt. # 47-2].

#### a. Private Nuisance Claim

Under Conn. Gen. Stat. § 52-577, all actions founded upon a tort must be brought within three years from the date of the act or omission complained of. The Defendant argues in light of this statute that the Plaintiff's nuisance action is now time-barred.

First, the Defendant argues that UI's distribution line was de-energized in May of 2008, and therefore could not have emitted EMFs after that date.  [Dkt. # 47-2, pp. 9-11].  Thus, according to the Defendant, the Plaintiff's present suit is untimely, because it commenced over three years later, in June of 2011.  [*Id.*] This argument is unavailing.  The Plaintiff brought her *Barnett I* action mere days after

Defendant UI stopped producing EMFs on the Plaintiff's property in May of 2008. Under 28 U.S.C. § 1367(d), the statute of limitations as to the Plaintiff's claims was then tolled for the duration of the pending suit. *See Bodine v. Graco, Inc.,* 533 F.3d 1145, 1155 (9th Cir. 2008) (holding that under 28 U.S.C. § 1367(d), where a plaintiff asserts state law claims in federal court under the court's supplemental jurisdiction, the statute of limitations for the state law claims will be tolled during the pendency of the litigation); *see also Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010).  Because this action was brought contemporaneously with the final stages of *Barnett* I, the three-year statute of limitations has not expired and the Plaintiff's claims are timely.

Second, the Defendant argues that "Plaintiff's complaint arises from her allegation that UI was responsible for the emission of EMF as a result of operating distribution lines near her property.  UI's distribution line was already in place when the Plaintiff bought her property in 1985." [*Id.* at 10].  Thus, according to the Defendant, in order to have filed timely claims, the Plaintiff must have brought her action within three years of moving into her home in 1985. [*Id.*]. The Defendant's second argument is also unconvincing.  The Plaintiff's present suit stems from allegations that the Defendant's *EMF production* constituted an intentional private nuisance.  Thus, the statute of limitations began to run in 2008, when the Defendants ceased to produce the allegedly harmful EMFs on the Plaintiff's property, and not two decades prior, when the power line was first installed. *See OBG Technical Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490, 510 (D. Conn. 2007) (quoting from *Neuhaus v.*

*DeCholnoky,* 280 Conn. 190, 201, 905 A.2d 1135 (2006) (holding that the statute of limitations for actions in tort is tolled while "some later wrongful conduct of a defendant related to the prior act" continues))*; see also Vanliner Ins. Co. v. Fay,* 98 Conn. App. 125, 140 (Conn. App. Ct. 2006) ("When the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed.").  Thus, the Plaintiff was not required to bring suit in or before 1988 in order for her action to be timely.

Finally, the Defendant argues that the principle which tolls a statute of limitations for the duration of a continuous course of conduct does not apply once the Plaintiff has discovered her harm.  Thus, the Defendant alleges that "because the Plaintiff knew of her injuries by 2007 at the latest, she identified EMF as a cause of her injuries back in 1994, and she alleged in 2008 (more than three years before filing this lawsuit) that UI contributed to those injuries," the Plaintiff is now barred from bringing her claim because the statute of limitations began more than three years ago, when the Plaintiff discovered her alleged injuries.  [Dkt. # 47-2, p. 17].  However, in arguing that the statute of limitations for the Plaintiff's claims began when the Plaintiff discovered her injury, the Defendant relies on cases which deal with a "different statute of limitations (Conn. Gen. Stat. § 52–584), one that contains a separate two-year limitation triggered when an injury is 'first sustained or discovered.'"  *Int'l Strategies Group, Ltd. v. Ness*, 645 F.3d 178, 183 (2d Cir. 2011).  Thus, this argument, too, is unavailing.  *See id.* (holding that under Connecticut law, the statute of limitations

for tort actions "begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury").

In any case, the harm here complained of is UI's alleged production of EMF radiation on the Plaintiff's property, interfering with her use and enjoyment of her land.  The Defendant itself states that the Plaintiff knew that UI had supposedly contributed to her harm in 2008, when she brought her *Barnett* I action against it. As explained above, the statute of limitations was then tolled for the duration of the suit.  Thus, the Defendant has no grounds for alleging that the Plaintiff's claim is untimely, even were the statute of limitations to begin running when the Plaintiff discovered her actionable injury against the Defendant.

In sum, the statute of limitations for the Plaintiff's nuisance claim began to run in 2008.  The statute was then tolled for the duration of the pending action in *Barnett* I, which ended in 2011, when the present suit had already commenced. Thus, the Plaintiff's nuisance claim is not time-barred under the three-year statutes of limitations for actions in tort, and the Defendant's motion so arguing is denied.

### b. Takings Claim

Finally, in regard to the Plaintiff's second claim for relief, the Defendant argues that the takings claim is barred because it is untimely under the doctrine of laches.  [*Id*. at p. 8].  This equitable doctrine requires a defendant to show that: "(1) the plaintiff knew of the defendant's misconduct; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant was prejudiced by the delay." *Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir. 1998).

In this case, the Defendant has no grounds for alleging that the Plaintiff inexcusably delayed in taking action once she knew of her claim against the Defendant.  UI itself asserts that the Plaintiff knew that "UI was a supposed contributor to [her] injuries by no later than May of 2008," when the Plaintiff filed her *Barnett I* claim. [*Id.*]. *Barnett I* did not fully conclude until October of 2011, when the Supreme Court denied certiorari.  By that time, the Plaintiff had already filed the present action, which commenced in June of 2011.  Thus, the Defendant's argument that the Plaintiff unreasonably delayed in bringing her claim against it is unconvincing.

Moreover, the Defendant's argument under the doctrine of latches cannot prevail because, for the same reasons discussed above, the claim is timely under the statute of limitations.  *See United States v. Milstein*, 401 F.3d 53, 63 (2d Cir. 2005) ("[A]s a general rule, [l]aches is not a defense to an action filed within the applicable statute of limitations."). Connecticut courts have held that § 52-577, the three year statute of limitations for tort actions, is the appropriate limitations statute to apply to takings claims. *LeStrange v. Town of Oxford*, CV 950052342S, 1997 WL 707106 (Conn. Super. Ct. Nov. 4, 1997).   Here, the Defendant continued to operate a power line on the Plaintiff's property until May of 2008, thus continuing the complained-of conduct up to the month that the Plaintiff filed its first federal suit.  That litigation then tolled the statute of limitations up until the commencement of this suit.  Thus, the Plaintiff brought her case well within the applicable statute of limitations.

On these grounds, Defendant UI's motion for summary judgment as to the Plaintiff's second claim for relief is now denied.

### 3.  Counts Six through Nine against Defendant UI

Counts six through nine fail to state any factual allegations whatsoever pertaining to Defendant UI, and thus cannot state a claim against Defendant UI. In particular, counts six through eight pertain to Defendant NU's purportedly fraudulent conduct during the *Prescott* action, an action to which Defendant UI was not a party and thus could not have contributed. Count nine states a claim for negligent private nuisance without any reference to conduct by Defendant UI.  Accordingly, absent any particularized factual allegations against Defendant UI, Plaintiff's claims six through nine against Defendant UI are hereby dismissed.

### VI. Conclusion

For the foregoing reasons, the CL&P Defendants' motion for summary judgment on *res judicata* grounds is GRANTED, and the Plaintiff's claims as alleged against the CL&P Defendants are now dismissed in their entirety. The CL&P Defendants' motion in the alternative for judgment on the pleadings [Dkt. #32] and motion for partial summary judgment asserting that Plaintiff's claims are untimely [Dkt. #46] are thus denied as moot. As all claims against the CL&P Defendants have been dismissed, the CL&P Defendants, including CL&P, NU, and NUSCO, are hereby terminated from this case.

In regard to the Plaintiff's claims as alleged against Defendant UI, UI's motion for summary judgment, or alternatively, judgment on the pleadings, is now GRANTED as to counts four, five, six, seven, eight, and nine, and DENIED as

40

to counts two and three of the Plaintiff's case. Defendant UI's motion for summary judgment on statute of limitations grounds, [Dkt. #47] is denied.  Thus, Counts two and three as against Defendant UI will proceed.

IT IS SO ORDERED.

_____/s/_____

Hon. Vanessa L. Bryant
United States District Judge


Dated at Hartford, Connecticut: September 28, 2012