UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JUDY PRESCOTT BARNETT,<br>    Plaintiff, | : <br> : <br> : | |
| v. | : <br> : | CIVIL ACTION NO.<br>3:11-cv-1037 (VLB) |
| CONNECTICUT LIGHT & POWER<br>COMPANY, NORTHEAST UTILITIES,<br>NORTHEAST UTILITIES SERVICE<br>COMPANY, THE UNITED ILLUMINATING<br>COMPANY,<br>    Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : | <br><br><br><br><br><br>September 9, 2013 |

**MEMORANDUM OF DECISION GRANTING DEFENDANT UI'S MOTION FOR RECONSIDERATION [Dkt. #80] OF THE COURT'S MEMORANDUM OF DECISION [Dkt. #75]**

I. **Background**

The Plaintiff, Judy Prescott Barnett, claims that she was exposed to harmful radiation as a result of high levels of electromagnetic fields ("EMFs") emitted from power lines on her property. She filed the instant diversity action seeking damages from the United Illuminating Company ("UI"), Northeast Utilities ("NU"), Northeast Utility Service Company ("NUSCO"), and Connecticut Light and Power Company ("CL&P"), on June 27, 2011, on the grounds that the public utility companies' conduct in the course of their dealings with the Plaintiff amounted to breach of contract (Count 1); unlawful taking (Count 2); private nuisance (Count 3); unlawful trespass (Count 4); breach of duty of possessor-occupier of land (Count 5); fraud, misrepresentation and deceit (Count 6); negligent infliction of emotional distress (Count 7); negligent misrepresentation (Count 8); and

1

negligent private nuisance (Count 9). On September 28, 2012, this Court issued a Memorandum of Decision [Dkt. #75] on Defendants' Motions for Summary Judgment and Motion for Judgment on the Pleadings [Dkt. #s 30, 33, 47], in relevant part denying summary judgment in favor of UI as to counts 2, 3, 4, and 5 on the basis of res judicata, but granting summary judgment in favor of UI on the merits as to counts 4 and 5; and denying summary judgment as to UI on counts 2 and 3, unlawful taking and private nuisance. Currently pending before the Court is Defendant UI's Motion for Reconsideration [Dkt. #80] of the Court's denial of summary judgment as to the remaining counts 2 and 3. For the reasons that follow, Defendant UI's Motion for Reconsideration is GRANTED, and summary judgment is GRANTED in favor of Defendant UI as to counts 2 and 3.

II. Legal Standard

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "A motion for reconsideration is justified only where the defendant identifies an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ayazi v. United Fedn. of Teachers Local 2*, 487 F. App'x 680, 681 (2d Cir. 2012) (internal citation and quotation marks omitted); *Ensign Yachts, Inc. v. Arrigoni*, 3:09-CV-209 (VLB), 2010 WL 2976927 (D. Conn. July 23, 2010) (same). A "motion to reconsider should not be granted

where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257. Further, Local Rule of Civil Procedure 7(c) requires parties seeking reconsideration to "set[ ] forth concisely the matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order." D. Conn. Loc. Civ. R. 7(c).

III. <u>Procedural History</u>

Barnett has brought claims relating to the allegedly high levels of electromagnetic fields at her home on two occasions prior to the current action. In 1994, the Plaintiff commenced a lawsuit against NU in Connecticut Superior Court ("*Prescott*"), in which she sought damages and "a permanent injunction against NU to enjoin it from emitting harmful EMFs along the easement adjacent to Plaintiff's home." [Dkt. #31, Ds' Joint 56(a)(1) Stmnt. ¶13; Dkt. #36, P's 56(a)(2) Stmnt. ¶13]. In *Prescott*, the Plaintiff raised four causes of action against Defendant NU, including trespass (Count 1), abandonment of easement (Count 2), nuisance (Count 3), and inverse condemnation (Count 4). [Dkt. #31-1, *Prescott* Am. Compl.]. In December of 1997 the case was tried in Bridgeport Superior Court. [Dkt. #31, Ds' Joint 56(a)(1) Stmnt. ¶15; Dkt. #36, P's 56(a)(2) Stmnt. ¶15]. At the conclusion of the Plaintiff's case, the Defendant moved for dismissal. The court reserved its decision on the motion, and heard the evidence presented by the Defendant's experts. [Dkt. #31-4, *Prescott* MTD Decision p. 2]. In January 1998 the Superior Court dismissed the case on the grounds that the Plaintiff had failed to make out a *prima facie case* for each of her claims. [Dkt. #31, Ds' Joint

3

56(a)(1) Stmnt. ¶16; Dkt. #36, P's 56(a)(2) Stmnt. ¶16; Dkt. #31-4, *Prescott* MTD Decision].

In 2008, the Plaintiff filed a federal action against NU, UI, and others ("*Barnett I*") by invoking the court's federal question jurisdiction. [Dkt. #31, Ds' Joint 56(a)(1) Stmnt. ¶17]. In *Barnett I*, the Plaintiff brought claims under both state and federal law, including various federal constitutional violations (Count 1); conspiracy (Count 2); breach of contract (Count 3); intentional infliction of emotional distress (Count 4); breach of duty of superior knowledge (Count 5); breach of fiduciary duty (Count 6); unlawful taking (Count 7); intentional nuisance (Count 8); unlawful trespass (Count 9); breach of duty of possessor-occupier of land (Count 10); and misrepresentation and deceit (Count 11). Barnett alleged Counts 1 through 6 against all defendants in the action, but only alleged Counts 7 through 12 against some – but not all – of the defendants. [Dkt. #81-3 *Barnett I* Am. Compl.]. Barnett did not allege Counts 7 through 12 against UI.

In a memorandum of decision on defendants' motion to dismiss, the court dismissed Count 3 as to UI and counts 4, 5, and 6 as to all defendants on the grounds that Plaintiff had failed to state a claim upon which relief could be granted. [Dkt. #81-1, *Barnett I* MTD Decision pp. 35-37, 35 n.12]. The court denied the defendants' motion to preclude count 3 as to defendant CL&P, and counts 7, 8, 9, and 10 on res judicata grounds, finding that, while it "may be in a better position to evaluate any preclusive effect of the prior state court judgment at the close of discovery and upon review of the entire record," res judicata was not "at this stage in the proceedings, a bar to recovery." [*Id.* at p. 34]. The case thus

4

proceeded to discovery with regard to Plaintiff's remaining federal claims in counts 1 and 2 against all defendants *including UI*, as well as with regard to counts 3, 7, 8, 9, 10, 11, and 12 containing the remaining state claims which Barnett alleged against some defendants, *but which she did not allege against UI*.

The plaintiff and the defendants then moved for summary judgment. [Dkt. #31, Ds' Joint 56(a)(1) Stmnt. ¶19]. On March 11, 2010, the court issued its summary judgment decision in *Barnett I*. [*Id.* at ¶20; Dkt. #81-2, *Barnett I* MSJ Decision]. The court granted summary judgment in favor of all defendants including UI on the plaintiff's federal claims (counts 1 and 2) and declined to exercise supplemental jurisdiction over the plaintiff's remaining state claims (counts 3, and 7 through 12), all of which were alleged specifically against defendants *other than* UI. [Dkt. #81-2, *Barnett I* MSJ Decision pp. 22, 23]. The Court's decision granting summary judgment and declining to grant supplemental jurisdiction over the Plaintiff's state claims was later affirmed by the Second Circuit Court of Appeals. *Barnett v. Carberry*, 420 F. App'x 67 (2d Cir. 2011). On October 3, 2011, the Supreme Court declined to grant certiorari for the case. *Barnett v. Carberry*, 132 S. Ct. 248 (2011). Thus, at the conclusion of the *Barnett I* action, all counts that had been alleged against UI were, after the court's motion to dismiss and summary judgment decisions, dismissed on the merits. All state claims over which the court declined to exercise supplemental jurisdiction were alleged against defendants other than UI.

On June 27, 2011, Barnett filed the instant diversity action. This Court issued a Memorandum of Decision [Dkt. #75] on Defendants' Motions for

5

Summary Judgment and Motion for Judgment on the Pleadings [Dkt. #s 30, 33, 47] on September 28, 2012.  The Court ruled that counts six through nine of this action, which Plaintiff had not alleged in *Barnett I* (alleging fraud, misrepresentation and deceit (Count 6); negligent infliction of emotional distress (Count 7); negligent misrepresentation (Count 8); and negligent private nuisance (Count 9)), were barred as to all defendants, including UI, "because the Plaintiff could have, but failed to, raise them in *Barnett I*."  [Dkt. #75, Court's 9/28/12 MSJ Ruling p.16].  The Court further dismissed counts one through five – which constituted the state claims which Plaintiff had alleged in *Barnett I* and as to which the previous court declined to exercise supplemental jurisdiction – as to defendants CL&P, NU, and NUSCO on res judicata grounds because the *Prescott* action brought in Connecticut Superior Court in 1994 and this action "stem from identical facts and events, [and] the Connecticut Superior Court's [1998] judgment constitutes a judgment on the merits of the same transaction complained of here."  [Dkt. #75, Court's 9/28/12 MSJ Ruling pp. 20, 26].

The Court declined to dismiss counts two through five as to defendant UI[1] on res judicata grounds because UI had not been a party to the *Prescott* action. In making this determination, this Court erroneously concluded that counts two through five had been alleged against defendant UI in *Barnett I* and that the *Barnett I* court had declined to adjudicate the merits of these counts in relation to UI.  [Dkt. #75, Court's 9/28/12 MSJ Ruling pp. 15-16].  In fact, Plaintiff had never alleged counts two through five against defendant UI in *Barnett I*, but rather

---

[1] The Plaintiff did not assert count one against UI, thus count one was not at issue as to UI.

alleged them against CL&P.  Thus, at the conclusion of *Barnett I*, no counts remained as against defendant UI, and all counts that had been alleged against UI were adjudicated on the merits in UI's favor.

UI now urges this Court to reconsider its ruling declining to grant summary judgment in favor of UI as to counts two and three based on the Court's misreading of the *Barnett I* decision and not to relitigate an issue already litigated as Plaintiff contends.  *See Shrader*, 70 F.3d at 257.   As the correct reading of that decision falls squarely within the realm of "data that the court overlooked," and alters the conclusion reached by this Court, Defendant UI's motion for reconsideration is justified.  *See id.* The Court GRANTS UI's Motion for Reconsideration and will next consider UI's arguments that it is entitled to summary judgment on counts two and three based on the claims and rulings in *Barnett I*.

IV. <u>Discussion</u>

a. <u>Count 3: Nuisance</u>

Barnett has alleged in this action that Defendant UI's "emission of abnormally and unreasonably high EMF levels "had a natural tendency to create danger and inflict injury upon the persons of Plaintiff and her family and to destroy the habitability of her property," thus constituting an intentional private nuisance.  [Dkt. #22, Am. Compl. ¶ 73].  UI counters that Plaintiff's nuisance claim is barred by the statute of limitations.  [Dkt. #47-2, UI's MSJ, pp. 5, 9].

"A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land."  *Pestey v. Cushman*, 259 Conn. 345, 352

7

(Conn. 2002) quoting 4 Restatement (Second), Torts § 821D (1979). To recover on a claim for private nuisance, a plaintiff must show that the defendant caused "an unreasonable interference with the plaintiff's use and enjoyment of his or her property." *Id.* at 361. Whether the interference is unreasonable depends upon a balancing of the interests involved under the circumstances of each individual case." *Id.* Thus, "[c]onsideration must be given not only to the interests of the person harmed but also [to] the interests of the actor and to the interests of the community as a whole." *Id.* at 352. "Ultimately, the question of reasonableness is whether the interference is beyond that which the plaintiff should bear, under all of the circumstances of the particular case, without being compensated." *Boyne v. Town of Glastonbury,* 110 Conn. App. 591, 603-04 (Conn. App. Ct. 2008) (quoting *Pestey*, 259 Conn. at 362).

Pursuant to Conn. Gen. Stat. § 52-577, all actions founded upon a tort must be brought within three years from the date of the act or omission complained of. Conn. Gen. Stat. § 52-577. Both Plaintiff and Defendant UI agree that UI's distribution line was de-energized on May 2, 2008 and therefore could not have emitted EMFs after that date. [Dkt. #47-3, UI's 56(a)(1) Stmnt. ¶7; Dkt. #54, P's 56(a)(2) Stmnt. ¶7]. Thus, in order to have timely filed her nuisance claim, the Plaintiff must have brought her action – at the latest – within three years of May 2008 when UI's distribution line was deactivated. Plaintiff brought her *Barnett I* action on May 9, 2008, seven days after the line's deactivation, but did not allege

8

a nuisance claim against UI.[2] Rather, Plaintiff alleged a nuisance claim against CL&P only. [Dkt. #81-3 *Barnett I* Am. Compl. ¶¶ 97-98; *see also Barnett v. Carberry, et al*, No. 3:08-cv-00714-AVC, dkt. #16, Am. Compl. ¶¶ 97-98]. Plaintiff brought the instant diversity case on June 27, 2011 and, for the first time, alleged a nuisance claim against UI. Because Plaintiff brought this action more than three years from the last date upon which UI could have emitted EMFs on Plaintiff's property, Plaintiff's nuisance claim is barred by the applicable three year statute of limitations. *See Corcoran v. City of Milford*, CV085017014, 2008 WL 2966824 (Conn. Super. Ct. July 8, 2008) (granting summary judgment where statute of limitations pursuant to Conn. Gen. Stat. § 52-577 had run on permanent nuisance claim).

Plaintiff's contention that the statute of limitations as to Plaintiff's nuisance claim was tolled during the pendency of the *Barnett I* action pursuant to 28 U.S.C. § 1367(d), which tolls the statute of limitations on claims made pursuant to a federal court's supplemental jurisdiction, is unavailing. [Dkt. #53, P's Opp. to MSJ, p. 24]. 28 U.S.C. § 1367(d) provides that "[t]he period of limitations for any claim asserted . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d). Plaintiff did not assert a nuisance claim against Defendant UI in *Barnett I*. Thus, the three year statute of limitations on Plaintiff's nuisance claim against UI could not have been tolled pending the outcome of *Barnett I*. As such, the statute of limitations for the Plaintiff's nuisance claim began to run in

---

[2] Plaintiff did not serve her complaint on Defendant UI until July 13, 2011. [Dkt. #10, Return of Service, p. 17].

9

May 2008; because the Plaintiff did not allege her nuisance claim against Defendant UI within three years of this date, her claim is time barred. Summary judgment is GRANTED in favor of Defendant UI on Plaintiff's third count as to nuisance.

    b. <u>Count 2: Unlawful Taking</u>

The Plaintiff alleges that defendant UI, in collaboration with CL&P, operated its power lines in such a manner that it caused her and her family physical injury and rendered her property "uninhabitable, unmarketable, and without value for the purpose for which the Plaintiff purchased it and used it, depriving the Plaintiff of the value of her home and land." [Dkt. #22, Am. Compl. ¶68]. Defendant UI argues that Plaintiff's takings claim is barred because it is untimely under the doctrine of laches. [Dkt. #47-2, UI's MSJ, p. 8]. The Court agrees.

The equitable doctrine of laches requires a defendant to show that: "(1) the plaintiff knew of the defendant's misconduct; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant was prejudiced by the delay." *Ikelionwu v. U.S.*, 150 F.3d 233, 237 (2d Cir. 1998); *see also Allens Creek/Corbetts Glen Pres. Grp., Inc. v. W.*, 2 F. App'x 162, 164 (2d Cir. 2001) (same; "[t]he equitable defense of laches bars an equitable claim where the plaintiff has unreasonably and inexcusably delayed, resulting in prejudice to the defendant"). "Laches is based on the maxim, '*vigilantibus non dormientibus aequitas subvenit*,' meaning 'equity aids the vigilant, not those who sleep on their rights.'" *Allens Creek*, 2 F. App'x at 164. "[A]s a general rule, [l]aches is not a defense to an action filed within the applicable statute of limitations." *U.S. v. Milstein*, 401 F.3d 53, 63 (2d Cir. 2005).

Connecticut courts have held that § 52-577, the three year statute of limitations for tort actions, is the appropriate limitations statute to apply to takings claims under the Connecticut constitution's inverse condemnation provision. *LeStrange v. Town of Oxford*, CV 950052342S, 1997 WL 707106 (Conn. Super. Ct. Nov. 4, 1997).

Here, Barnett knew of UI's alleged misconduct for many years and failed to take action against UI – despite having brought two prior actions against other Defendants relating to the same allegations she now makes against UI, both of which included a takings claim – until May of 2008. Both the Plaintiff and Defendant agree that UI was authorized by CL&P to construct a distribution line on a portion of the right-of-way across Plaintiff's property around 1964, and that UI de-energized this line on May 2, 2008. [Dkt. #47-3, UI's 56(a)(1) Stmnt. ¶7; Dkt. #54, P's 56(a)(2) Stmnt. ¶7]. Plaintiff purchased the property she claims has been subjected to unreasonable levels of EMFs in December of 1985. [Dkt. #21, Am. Compl. ¶2]. Barnett brought her first action – *Prescott* – against Defendant NU in Connecticut Superior Court in 1994, alleging four claims, including an inverse condemnation claim against NU. The court dismissed each count against NU on January 6, 1998, on the grounds that the Plaintiff had failed to make out a *prima facie case* for each of her claims. Plaintiff then filed *Barnett I* on May 9, 2008, more than ten years after *Prescott*'s conclusion, but did not allege an unlawful taking claim against Defendant UI. Instead, she alleged an unlawful taking against CL&P only. Plaintiff commenced the present action in June of 2011 and, for the first time, alleged an unlawful taking claim against UI. This delay is

inexcusable. Plaintiff was cognizant of a potential unlawful takings claim during her *Prescott* action in 1994, and again during *Barnett I* in 2008. She failed in both actions to allege an unlawful takings claim against UI despite UI having operated a distribution line on Plaintiff's property since 1964, and despite Plaintiff having lived in her home on this property since 1985. Further, UI has been prejudiced by the Plaintiff's unreasonable delay in asserting her takings claim against it. UI deactivated its distribution line in 2008 and litigated its defense against Plaintiff's claims for over three years in *Barnett I*, expending considerable time and expense in doing so. UI, therefore, had a reasonable expectation that Plaintiff would bring all claims against it in that action. To allow Plaintiff to assert this claim now, in her third case arising from her allegations of unreasonable EMF transmittal on her property, would force UI to litigate an issue that fully accrued more than twenty five years before this action was brought, the underlying allegations of which date back to 1985.

Moreover, even if the doctrine of laches is inapplicable in this case, the Plaintiff's takings claim must fail as it was not brought within the applicable statute of limitations. As noted prior, UI deactivated its distribution line in May of 2008. The Plaintiff failed to allege an unlawful taking claim against UI in *Barnett I*, and thus the applicable three year statute of limitations was not tolled during the pendency of that action. Plaintiff's takings claim – alleged first against UI in the present action in June of 2011 – falls outside this three year statute of limitations.

Further, even if neither the doctrine of laches nor the three year statute of limitations is applicable to the state takings claim against UI, Plaintiff's claim fails

under the doctrine of res judicata. Under both Connecticut and federal law, the doctrine of res judicata provides that "a final judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim." *Dontigney v. Roberts*, 73 Conn. App. 709, 710 (Conn. App. Ct. 2002); *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n. 5 (1979). The preclusive doctrine of res judicata is "based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate." *Honan v. Dimyan*, 63 Conn. App. 702, 707–08, (Conn. App. Ct. 2001). Thus, res judicata bars not only those claims actually asserted in a prior proceeding, but rather "serves as an absolute bar to a subsequent action involving any claims relating to such cause of action that were actually made or that might have been made" in a prior action. *Legassey v. Shulansky*, 28 Conn. App. 653, 656 (Conn. App. Ct. 1992); *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

The Plaintiff does not dispute that her claim in the present action is based upon the same transaction as in *Barnett I*, and the present action arises from the same nucleus of operative fact. [Dkt. #34]. In *Barnett I*, Plaintiff alleged a takings claim against CL&P but failed to allege a takings claim against UI. Instead, Plaintiff alleged federal Constitutional claims, breach of contract, intentional infliction of emotional distress, violation of the duty of superior knowledge, and violation of fiduciary duty against UI, all of which the court dismissed on the merits. Plaintiff's takings claim against CL&P alleged that CL&P's "improper use of the easement . . . constitutes a physical taking consisting of a permanent

physical occupation of Plaintiff's property without just compensation." [Dkt. #81-3 *Barnett I* Am. Compl. ¶92]. As discussed, UI's distribution line was constructed around 1964 and de-energized on May 2, 2008, seven days before Plaintiff brought *Barnett I*. As Plaintiff's takings claim against UI would necessarily arise from the same nucleus of operative fact as that alleged in *Barnett I*, and as UI had operated the distribution line adjacent to Plaintiff's property for the entire duration of Plaintiff's habitation of that property, Plaintiff could have brought her takings claim against UI in *Barnett I*. Plaintiff's unlawful taking claim against UI in the present action is thus barred by the doctrine of res judicata.

In sum, Plaintiff's unlawful taking claim is barred by *res judicata,* laches and the three year statute of limitations because the claims arose in May of 2008, more than 25 years before this action was brought, and because the Plaintiff knew of and asserted these very claims against other defendants in *Barnett I* but not against UI. Summary judgment is GRANTED in favor of Defendant UI as to Plaintiff's second count as to unlawful taking.

V.  Conclusion

For the foregoing reasons, Defendant UI's Motion for Reconsideration having been GRANTED, the Court GRANTS summary judgment in favor of Defendant UI as to counts 2 and 3, the only remaining counts. As no counts remain extant for trial the Clerk is directed to enter judgment in favor of Defendant UI and to close this file.

IT IS SO ORDERED.

_____/s/_____
**Hon. Vanessa L. Bryant,
United States District Judge**

**Dated at Hartford, Connecticut: September 9, 2013**